Good morning, Mr. Luck. Thank you, Your Honor. Good morning. May it please the Court. My name is Jason Luck. I'm here representing the Snyders in this matter. This is an appeal of a disallowance of a bankruptcy claim before the Southern District of New York's Bankruptcy Court, and it arises long, long ago in Charleston, South Carolina, out of a defense to a mortgage foreclosure. And what ended up happening many, many years ago, and I was the lawyer for the Snyders at that time as well. One of the Snyders has died since. During the process of the foreclosure, Ditech filed for bankruptcy, and we're all familiar with what happens then. The automatic stay is asserted. The state court action loses jurisdiction. Well, then, I believe in February of 2019, the bankruptcy court here in Southern District of New York issued an order granting limited relief from the bankruptcy stay, allowing Ditech to continue proceeding with actions below for the purpose of defending, unwinding, or otherwise enjoining precluding foreclosure in order to finish their foreclosure matters and continue their business below in the state courts. Because in the state court, the counterclaims that the Snyders asserted against Ditech were of different natures. Some were equitable, asking to stop the foreclosures, enjoin the foreclosure, quiet title in the property, do away with the mortgage, while others requested money damages against Ditech, whether it being a breach of contract, unfair trade practices, or one thing that was really discussed extensively in the courts below, this in-ray mortgage foreclosures order that the South Carolina Supreme Court entered back many years ago after the Great Recession. And so that was, I call that the admin order. That was an order that the South Carolina Supreme Court issued that provided some protections, additional protections for persons going through mortgage foreclosure intervention. It mirrors, actually, in a very simplified form, some of the protections that the Eastern District of, or sorry, maybe Eastern or Southern District of New York's foreclosure mitigation program also allow. So it seemed familiar. But nonetheless, that was one of the claims that was asserted also that the Snyders asserted was what we called civil compensatory contempt under that order for a variety of misconduct. And I could go on. I only have a little over seven minutes, and this case has followed me for 12 years. So certainly I've gone through them in agonizing detail in the briefs. I can probably bring up some highlights if you want to hear them. But ultimately, that misconduct necessitated sanctions under that order. And that is an order that allowed whatever court that had jurisdiction over the foreclosure proceedings to sanction the litigants for failing to proceed with mortgage intervention in good faith, which is what we contend has happened here. Now... Mr. Look, it appears to me, based on the record, I mean, I think essentially your argument is that the counterclaims that the Snyders wanted to bring in state court that were stated during the bankruptcy should have been able to proceed and that both the bankruptcy court and the district court improperly dismissed them. Is that the essence of the argument? Well, the essence here, well, the state court actions, yes, the district court, bankruptcy court did improperly dismiss those claims. Those claims were reserved and preserved via a January 20, 2020 stipulation entered into by... But collateral estoppel doesn't deal with claims, it deals with issues. So at best, race judicata may not be able to apply, but you're suggesting that you get a freebie with respect to any issues that are litigated elsewhere and that none of that could be used for collateral estoppel purposes in future proceedings, including a bankruptcy. See, I'm not sure what support you have for that under the law. Well, I'm not asking for a broad ruling like that, Your Honor. We do have, there is a stipulation that specifically reserves, that specifically preserves these claims, that specifically says these claims may proceed. But isn't there a difference between preserving claims and saying any issues that are resolved elsewhere in another court where you get a full opportunity to litigate it are not going to have collateral estoppel effect here? That's not in the stipulation. You could put that in, I guess. But that's, there is a point. We don't need to overwrite and overlitigate these things. But you're right, though. If you have a full opportunity to litigate all claims, I may have to agree with you,  What happened in the State case where you did get a full opportunity to litigate it? No, Your Honor, because under collateral estoppel requires the identical issues, at least under South Carolina law, be actually litigated. Bear in mind that these claims, once the case was stayed, once the non-monetary aspects of the foreclosure proceeded and the monetary claims were stayed, the case changed its nature. If you'll notice the, and a lot of this is dealt with in my reply brief, but if you'll notice the DITEC waived their deficiency judgment, which meant that now the issue of apportionment, the issue of money damages, numbers, starts to, the importance of it starts to decline. Well, I guess one thing, though, is that, in essence, the claims you believe you still should be able to maintain are essentially that there were problems in how the foreclosure process happened. Correct? Correct. But in the State court, and one of the rulings in the Court of Appeals sort of talked about how they didn't find any real issue with the processes that happened during the course of the foreclosure. So, it seems to me, what analytically distinct claim are you suggesting would still exist? So, look at what the relief requested before the Court of Appeals versus the bankruptcy claims. So, when we're talking about the Court of Appeals, this is almost an all or nothing sort of proposition. We're talking about putting the brakes on foreclosure. What sort of quantum of proof is necessary? Or, think of it another way. Think of it like, this is one of my favorite analogies, a real estate contract. Think of it as if we had a real estate contract. The amount of proof necessary to force someone to engage in specific performance and force someone to sell property, that requires quite a showing. And so, the Supreme Court similarly said, or the Supreme Court, the Court of Appeals of South Carolina said, no, there's not enough proof to put the brakes on this foreclosure. They didn't. And, of course, this is an unreported, non-precedential, per curiam order. So, it's not exactly very fleshed out because it doesn't need to be. Because the Court there even knew that they were only handling a discrete issue here. That is, can this foreclosure proceed? The answer was no. They don't need to get into the issues, into the weeds, into the deep issues here of, well, how much delay took place? How much delay is the Snyder's fault? How much delay is the servicer's fault? How much did this delay cost in terms of fees? Well, but I guess, and what I'm struggling with is, is like, the South Carolina Court of Appeals said, on the summary judgment, viewing the facts in the light most favorable to Snyder, we conclude that there was no genuine issue as to any material fact concerning whether Dytek complied with the administrative order. They then later go on and say, we find the evidence does not demonstrate Dytek's actions constituted a failure to act in good faith during the foreclosure intervention process. So, I mean, given that, what would there have been left to do? Well, what was in front of the Court at that time? I'm not in a position to ask you questions, but my response to that would be, what was in front of the Court of Appeals, though? They don't need, to the extent that the Court of Appeals even did say that we find that this order, that Dytek has complied with this order in all aspects. They are good citizens. They have engaged in good faith behavior, no bad faith behavior. Keep in mind that for collateral estoppel to apply, the ruling must also be necessary. That's not necessary. They didn't need to go that far to actually reach the decision they reached. And to the extent that the Court of Appeals did say, oh, they did everything right, they didn't need to. They didn't have to. And so, therefore, to the extent that they are saying everything was done correctly, collateral estoppel does not apply to that portion of it. That's what makes this so difficult when you have a sort of a short opinion that doesn't have a lot of detail to it. And I think if you notice that even that opinion, especially in one of the footnotes, they note that they're not deciding everything. They know that it's just, they're just handling the foreclosure. And so what we have left are the possibilities of money damages, the numbers. What numbers, what damages were caused by what amount of delay? That can be decided without having to undo the foreclosure, stop the foreclosure. It could have been done had all of these claims been bundled together and handled together by the state court. They were not. They were split, both by the jurisdiction of the court and by the agreement of the parties. I see my time is up. Thank you very much for coming up from South Carolina. I hope you get back there for Thanksgiving. Oh, no, I'm taking the train back, Your Honor. It's going to be 13 hours. It'll be wonderful. All right. Thank you. Thank you all. Case under advisement. Thank you very much. Have a good day.